case number 23-738 Tanvir v. Tansy. Good morning. May it please the court, Bahar Azmi from the Center for Constitutional Rights along with co-counsel of CUNYCLEAR Project and Debra Wiesen-Clinton for the plaintiff appellants. These three American Muslim plaintiffs plausibly pled a prima facie RIFRA claim through allegations showing that the individual federal defendants pretextually placed and maintained them on a no-fly list as part of an escalating campaign to coerce them to become informants on their religious community, a substantial burden on their sincere religious beliefs, namely not betraying their faith community and bearing false witness against them. And they, agents, did so knowing, as we allege. Is there any allegation in the complaint that said that the plaintiffs had a religious objection to the requested cooperation? Yes, your honor. Corresponding to each of the plaintiffs, that's allegation 84-122 and 157. And what was the specific nature of the allegations? The specific nature of the allegations is that it would betray their fellow religious adherents and their religious... I'm sorry, maybe I wasn't clear with the question. That they stated specifically to the FBI agents or to the officials that there was a religious objection. There are no particular allegations that they affirmatively articulated their religious objections to the FBI agents, but of course our position is that's not required in the case law. Well, why is that not required? How can you hold someone personally liable in damages for coercing someone to violate their religious beliefs or practices if there's no particular reason to think that the defendant was aware that there was any such religious obligation or belief? Let me be clear. We plead that there, based on the emphasis of the complaint, there is ample reason for these particular FBI agents to know. Well, I'm sorry, I want to hear what those allegations are, but it seemed to me that there was not, for example, an allegation that all Muslims share this belief. It doesn't even say most. It says many Muslims share this belief. So why would it be obvious to a particular FBI agent that this particular individual had such a religious belief absent that being specifically asserted? First, as a matter of law, it is absolutely not required under RFRA that a particular religious belief be shared by all adherents. I didn't say that. Let me be very clear. It seems to me undisputed and indisputable that even if this were a religion that had a pope or had some structure that purports to dictate what members of that religion should believe, even then, and I don't think there is anything in Islam like that, even then the individual religious beliefs of the plaintiff are what matter. So that's not the issue, but the issue is how can someone be liable in damages personally for violating a person's religious belief that he or she had no reason to believe existed? Okay, Your Honor, so let me refer to the pleadings, and I think we're now talking about qualified immunity and not necessarily a prima facie case. I think that's right, although I'm not even sure that that's true, but let's say it. Okay, because as you know, I think we'd also like to talk about step one in the prima facie case, but in terms of obviousness, what we plead is that these are FBI officers with a long set of experience doing counterterrorism who specifically approach Muslim adherents and specifically ask them to go into Muslim spaces with full knowledge that those are sacred spaces because it is a mosque or a website and betray their beliefs. So it would not be unlike an FBI agent, say, in 1986 who was in the Italian anti-mafia task force from asking an informant to go into a Catholic church in Carroll Gardens and start sort of snooping around a confessional. That to me should be obvious. Wait, wait, wait, snooping around a confessional or snooping around in a parish? Yes, snooping. So this does not seem like that. I mean, there are specific religious beliefs, some of them widely known and understood in the community. I think in Sapir, for example, no one would doubt, it seems to me at least, that it would be obvious, it should be obvious to a warden that congregate prayer on Fridays and indeed probably congregate prayer or at least some kind of prayer at regular times during the day is a basic tenet of Islam that is widely known to non-Muslims. Well, what's interesting, and I think Sapir helps prove my point here, is that they didn't know that and the wardens disagreed. And that's why the principle is objective and we're not supposed to question the sincerity of the belief. That's not the issue. The issue is the knowledge of the defendant, not the sincerity of the plaintiff. Understood, Your Honor. Yes. I mean, if the plaintiff's religious belief were entirely idiosyncratic, if it was a sincere religious belief, no one, at least I'm not, suggesting that there is any obstacle to a RFRA claim from that. But if it is entirely idiosyncratic or even something that is shared by less than a majority of all Muslims, at least the complaint only says many. It doesn't say most or a plurality or the average or the ordinary or the modal belief among Muslims. Why would we think that an FBI agent would understand, particularly when someone says, quite reasonably, I'm not going to go to Afghanistan and be an informant because that would be dangerous. Well, it's a reasonable FBI agent in this context, the counterterrorism officials, that is recruiting them specifically to go into Muslim spaces. And I think that makes it different than, for example, not knowing that a particular Eid al-Adha is really important and making an honest mistake. This is a long-term, from the interests of the complaint, a long-term, sustained campaign to pressure them specifically to go into Muslim spaces. By the way, is that true of each of the plaintiffs? Yes. I thought that Mr. Tanvir was asked to go to Afghanistan or Pakistan and infiltrate terrorist training camps. That's how it started. And then when they start coercing him by sort of telling him that he can get a passport back and the agents start having communications with him, they tell him he's honest, he's hardworking, and ask him to become an FBI informant in the local community, specifically the Dasey community in New York City, which we have to assume is the Muslim Dasey community. Does it say anything there about going into a mosque? Now, I realize one of the other defendants, I think it's— Mr. Al-Jabha, yes. Yeah, was asked to infiltrate a mosque that is not his mosque or not his community. Correct. That's a different scenario. Correct. But I didn't think that either of the other two were asked specifically to go into sacred spaces. By the way, does anyone understand that websites that discuss possible terrorist activities are sacred spaces? Well, it's not that it's necessarily a sacred space. It's that what they're being asked to do is act—Mr. Al-Jabha, who also was asked to go to the mosque—to act extremist and therefore lie to fellow adherents about his poor religious beliefs. And that strikes me that it should be obvious to any reasonable officer that people shouldn't profess something that they don't actually believe among fellow adherents. And again, that goes to the— is asking them to do something in contravention of their sincerely held beliefs. Yes. The context is very important regarding these particular officers and their long-term relationship with them over years and their continual pressure to sort of make them move in religious spaces and act differently than they otherwise would. And again, that goes to the sort of step two of the qualified immunity inquiry. But I really want to get at the threshold error that I think the district court committed, which it— let's then get back to the question of is that a qualified immunity story or is that something that would be necessary to make out a claim for damages as a prime facie matter? In other words, if an agent unknowingly— that that would make a claim for damages without some showing that there was some unreasonable behavior on the part of the agent? Your Honor, RFRA is very—at the prime facie stage, RFRA does not require that level of subjective knowledge. It's an objective test. Do you have a—is there a case that says that? I would say Mack v. Yost in the Third Circuit. And that even says that it's objective even at the qualified immunity stage. So—and the government has— Okay. Is there any case that's binding on us that you are aware of? I think, yes. Well, Hobby Lobby says it's an objective test. Okay. And the Catholic Church versus Burwell in the Second Circuit says it's an objective test. And again, even at the—even at the qualified immunity stage, which we were talking about before, Mack v. Yost says it's objective. It's a very strong protection. And the key mistake that the district court made was in jumping to step two and looking for decisional law where there is not a sort of a case directly on point, is resolving qualified immunity at the motion dismiss stage, which suburb counsels is really inappropriate, particularly with a burden-shifting statute. We have to look at the defendant's defense based on the four corners of the complaint. And the district court credited the defendant's interpretation of the complaint and said that we somehow conceded the compelling interest in narrow tailoring because there was one stray allegation that says the NFL, no-fly list, purports to be about aviation security. And the district court otherwise manufactured allegations out of thin air that this was part of a counterterrorism allegation. There is nothing in the complaint that suggests that the defendants had a compelling government interest with respect to these particular plaintiffs, which they have to show in order to get qualified immunity under SABR. And certainly that should suggest that we've stated a prima facie case based on the substantial burden, pressure to modify beliefs, combined with the sincere religious belief that is, you know, objectively reviewed. Is it necessary that the FBI agents pretextually placed these individuals on the list? It's very significant, Your Honor. Because if somebody else put them on and they are offering help in getting them off, would that be a violation? I think that's a harder case, but we allege a sort of, you know, collective concerted action and that each of the particular defendants participated in getting them on the no-fly list. And once they had that pressure, then used it to try and get them off. And, again, as to each individual plaintiff, is that true? Or put another way, is the allegation other than conclusory? Because it seemed to me that in at least some cases, Mr. Tanvir is a good example. He finds out he's on the list before anyone has approached him. Now, that does not preclude the possibility that someone put him on the list so as to approach him afterward. But is there any allegation that gives credence to that possibility? Yes. I mean, the allegations generally about- He flew before. Yes, he flew before, and then he refuses to cooperate, and then he finds himself when he goes to Atlanta, returns home from Atlanta on the no-fly list. And what's very interesting around this concerted action is that- Two points. When he comes- When he gets to the airport and cannot board, other FBI agents tell him, go back and talk to the New York agents. They all know. And when he tries later to fly through JFK to Pakistan via Saudi Airlines and is blocked, yet another FBI agent, Janet Ambrisco, I believe, tells him, go talk to Garcia. He's the person that you haven't been talking to. So it's almost like a welcoming committee because they all know, in a concerted way, that given the black box and opacity and potential to abuse, this is an enormously useful form of leverage. Well, again, they all know that that is useful leverage, but they would know that if they had in their hand a copy of a no-fly list that had been created independently of them, right? Well, yes. Because the analogy I'm thinking of is suppose these were people under indictment and the government said, well, we can settle this, we can drop these charges if you cooperate. Would that be problematic under RFRA? We would- I tend to think that that would be more of a benefit and a burden because there's no sort of pretextual development from the defendant to use the coercion. That's why I was asking, it is significant, maybe not controlling in your view, but it is significant at least, the allegation that they were placed on the list pretextually for the purpose of coercion. That's critical, and I think that's a very fair reading of the complaint based on what we allege about how the no-fly list works, which, by the way, 99% of FBI nominations are accepted by the TSC, and by the way, based on leaked information of the 1.5 million names on the TSA, on the no-fly list, 98% are Muslim. It's rife for abuse, has managed to evade judicial scrutiny for years, in part because of cases like this where the government continues to moot the claims, which is why we think under the Pearson framework, we really should reach step one to avoid kind of what Sauber says is the vicious cycle of shielded misconduct because they're never being told you can't abuse the no-fly list in this way. And the pretext point is important as a matter of fact. It's also important as a matter of law. I'm thinking of the retaliatory arrest cases, Your Honor, so remember in Reichel v. Howard, the Supreme Court says you're entitled to qualified immunity for retaliatory arrest if you have probable cause, and then the Second Circuit and other courts say, well, okay, if the plaintiffs plausibly plead you don't have probable cause in this pretextual arrest situation, then you're not entitled to qualified immunity, and that's precisely our case. We allege that the placement on the no-fly list was pretextual and improper, so the retaliation is also improper and they're not qualified immunity. So that would also distinguish, in your view, a case in which a prosecutor serves a grand jury subpoena on a Jew who has presumably reason to believe has information about some crime, and the recipient of the subpoena says, my religious belief is that as a Jew I may not testify, even truthfully, against a fellow Jew. And that is a belief that some, I don't know about many, some Jews sincerely hold. Not all, not most, but at least some. But that, in your view, as long as the grand jury subpoena is served in good faith and there is a legal obligation to testify on the part of all citizens, that wouldn't be a problem. That's right. More if there were a bona fide counterterrorism investigation, they were asked to testify against someone who happened to be a co-adherent of their religion. I'm not sure if that's not a substantial burden or if that meets their compelling interest, but either way I think ultimately that would not be right. So you get the allegation that the agents, A, were responsible, or some agents, someone acting in concert with these particular defendants, placed them on the list, and B, that was done pretextually and not out of a good faith basis to think that they should be on a no-fly list. That's right. And particularly so because in the grand jury context and the criminal indictment context, there is legal process where you can get under- You can challenge it. You can challenge it. Here we're stuck and it's a black box and they don't know how they got on, they don't know how they got off, unless you file a litigation. I would note that this practice of mooting cases continues. Our co-counsel, Cuny Clear, has a case in the D.C. Circuit, Moharam, that the government post-ficre mooted four days before briefing. The only cases that we believe that the government has fully adjudicated, the propriety of a no-fly list determination, I think, is the United States v. Boussic, which involved someone who had been convicted for hijacking an airline. You know, fairly low-hanging or high-flying fruit here for the government. And so in the absence of that possible accountability, we would urge the court first to remand with instructions to defer qualified immunity to the summary judgment stage, or in the alternative, reach step one and step two and conclude that the plaintiffs have pled a prima facie case and that the defendants were put- had fair warning that this practice with these particular plaintiffs violated clearly established rights under the statute, under Charlie v. Coughlin and under Sevier. Thank you, counsel. You're reserved a couple of minutes. Thank you. We'll hear from the government. Good morning. May it please the court, my name is Sarah Normand. I am with the U.S. Attorney's Office for the Southern District of New York on behalf of the agent defendants. When this court remanded this case six years ago, the panel directed the district court to consider whether the agents were entitled to qualified immunity, specifically noting that qualified immunity should be decided at the earliest possible stage and can be successfully asserted on a motion to dismiss. The Supreme Court also went out of its way to note plaintiffs' agreement that the defense of qualified immunity is available when individuals are sued for money damages under RFRA and that the plaintiffs had in fact emphasized to the Supreme Court that the qualified immunity defense was created for precisely these circumstances. Yes, but they didn't suggest to the Supreme Court, and the footnote doesn't say they suggested that, you know, we just wanted to establish the principle in this case, but we kind of recognized that there's qualified immunity. It's nothing like that. Certainly, Your Honor, but the court was very clear to direct the court's attention to, the district court's attention to WESB. WESB is a Supreme Court decision in which the Supreme Court made two principles very clear. One, qualified immunity has to be evaluated based on the particularized circumstances that the officers faced, and two, it cannot be evaluated at too high a level of generality. The right has to be framed, and the court made clear. We've repeatedly advised courts, instructed courts, that the right has to be defined at an appropriate level of specificity. Well, suppose we define this at the level of specificity of the pretextually placing someone on a list that for no legitimate reason that has a substantial effect on people's lives in order to coerce that person to violate his religious beliefs. Are you maintaining that a reasonable agent could think, oh, that's fine? Your Honor, no. We are saying that based on the allegations in the complaint, a reasonable officer might not have known for certain that serving as an informant, which these individuals were asked to do, would in fact implicate their religious exercise much less. That zeroes in on the questions that I asked Mr. Osme earlier. That's not really a question of how broadly should the right be defined. That's a question of would a reasonable agent have known on these facts that he was in fact asking someone to violate their sincerely held religious beliefs. That's a much narrower question, isn't it? I think they're related, though, Your Honor, because the district court defined the right here as the right not to be coerced or pressured. And, of course, we have arguments that the plaintiffs haven't plausibly alleged the kind of coercion that would be necessary to state a RIFRA claim. But setting that issue aside, the district court defined the right as the right not to be coerced or pressured to serve as an informant against others within his or her Muslim community or religious community. It doesn't have to be Islam. It could be any religion in this instance. And so it's important for purposes of framing the right that what the officers were asking the plaintiffs to do was serve as informants as opposed to, for example, violate religious exercise generally or violate one's religious beliefs. I'm not sure I understand the difference other than that it is defined specifically with respect to this particular religious belief. But, again, I think that goes more to the individual facts of the case than to the nature of the right. The nature of the right still seems to me to be pretextually putting someone in a position that puts a burden on their regular life in order to make them do something that violates their religious beliefs. The problem is would the agent have any reason to know that this act falls into that category more than would the agent know that if he did know that it fell in that category, he would still have qualified immunity. Your Honor, I think it's crucial to the clearly established inquiry to identify what the burden was that's alleged here. And I think it goes both to the question of whether the right is the right not to be pressured to inform on one's community as opposed to more generally violate one's religious beliefs. I think the district court correctly focused on the manner in which it was alleged that religious exercise was burdened. Maybe this is just a verbiage because I guess it comes out in the same place. But it seems to me that assuming that the agent knew that this was a sincerely held religious belief that I must not inform on members of my community, then we would have A, a violation, and B, one in which I guess I'd ask you, would you still be saying that because there's no case specifically on point for that, that the agent could do that and would still have qualified immunity even if he knew that this was a sincerely held religious belief? No, Your Honor. The Supreme Court has made clear that there are rare cases where it's obvious. And there may well be. There are cases where it's obvious. There are rare cases where it's obvious. And there may be a circumstance in which if had the plaintiffs made very clear to the agents at the time that what they were being asked to do would in fact burden a specific religious belief, burden a specific type of religious exercise, that that piece of the RIFRA claim would be viable in the absence of a specific case. I understand the argument to be that even if the plaintiffs did not make it clear, even if the complaint does not say that the plaintiffs said that specifically to these officers, they knew or should have known based on their experience and the context that this was in fact a request, that they violate their sincerely held religious beliefs. They do make that argument. And it doesn't hold up under scrutiny, Your Honor. There's no case even suggesting that the type of burden here, the type of pressure, the type of request that the agents made would in fact substantially burden religious exercise. And when you look at the facts... Is that a pleading question or is that a summary judgment question? It's most definitely a pleading question, Your Honor, because we are taking all of the facts that are alleged as true. And there's really no question, and plaintiffs' counsel have conceded it at multiple levels, including before the district court, that no plaintiff ever made any indication to any of these agents that serving as an informant would violate a sincere religious belief. Indeed, to the contrary. They allege themselves that what they told the agents was they gave perfectly understandable, reasonable, secular reasons, like it would be dangerous to do that, which, you know, I think it's... I don't know if there's any constitutional right that's violated, but it's sort of extraordinary to ask people to do these things and to put them... You know, if an agent put someone on a no-fly list pretextually in order to coerce him to infiltrate the mafia or the Ku Klux Klan or some other violent organization known for retaliating against informants, if there's not a cause of action for that, maybe there should be. But that's a separate... That's not the claim that's alleged here. It's alleged to be a RFRA violation. That's right, Your Honor. And I think it bears noting that the language of RFRA itself is quite broad. Substantially burdened religious exercise. And it's not a one-size-fits-all set of facts. As Your Honor noted earlier, there may be some Catholics who feel that going into a parish and informing on fellow co-religionists, fellow Catholics, would be a violation of religion. There may be others who feel differently. What really matters is what is the nature of the conduct at issue? Here it's informing on fellow co-religionists. And two, how does that conduct... How does the individual feel about that conduct? Does it violate that individual's sincere religious beliefs? Even taking as true the allegations that they held these sincere religious beliefs, there's nothing in the complaint, nothing at all to suggest that any of the three plaintiffs ever made any defendant aware of that in any respect. But, of course, I don't know, again, how rare the cases would be if you said to a Jew or a Muslim, this group that we want you to go into, they test you by asking you to eat pork, so you need to eat pork to go and do that. Wouldn't that be something that just about anyone would know? As I can't do that without saying for religious reasons, wouldn't anyone be expected to understand that? Your Honor, that may very well be the obvious case, but the allegations in this case certainly are not the obvious case. I do want to very briefly address, if I could, the notion that the court should go ahead and decide step one of a qualified immunity analysis, even if it agrees with the district court. Go ahead. There's certainly no need to do that under the case law, and there are good reasons not to. We've cited in our brief at page 41 a number of cases where these issues are, in fact, arising in cases that don't involve qualified immunity. And after the FICRA decision from the Supreme Court earlier this year, it seems only more and more likely that mootness issues are not going to preclude courts from evaluating this, number one. Number two, I would like to point out an internal inconsistency in the plaintiff's position on step one. In point two of their reply brief, they urged the court to make a pronouncement about whether RFRA would be violated in this circumstance. And then in point three of their reply brief, they argue that, no, no, the court shouldn't address the facts of the amended complaint. The court should remand to the district court to address these issues in the first instance if you're going to focus on the specific facts. Well, if you're going to focus on the specific agents, which strikes me as a somewhat different story, because there, if you reach that, that's not something the district court ever talked about. That's not something that is implicit. I mean, to some degree, when you're talking about qualified immunity, as the district court did, and you're talking about what the elements of the claim are and how broadly that's defined, that's a lot of what would be relevant to the somewhat hypothetical question of would this be a violation. Yes. It comes very close to the qualified immunity discussion itself. The question of did all of the agents who are sued actually do any of these things when there's a wide variety of degrees of involvement of particular agents in particular situations interacting with particular individual plaintiffs. That's a very – they're not really inconsistent, I don't think, to say that's something that if we get there, if we say, first, there is or isn't, whether we reach the step one stage or not, and then secondly, if we send it back, agreeing with them that there is not qualified immunity established at this stage for everyone on a broad principle, but there's a whole bunch of individual defendants that have their own individual defenses. I don't see why we would want to talk about that at all in this case ever as a court of appeals. We certainly agree that the court need not and should not go and evaluate the sufficiency of the pleadings unnecessarily, and that's an issue that the district court itself didn't need to do because it found properly on step two. Our point is simply that if the court is going to reach step one, and we took their argument to be that the court should reach step one even if it agrees with the district court on step two. Yes, that's their argument. And the court should not do that because in order to reach step one, it needs to look at the particularized allegations. It needs to evaluate the pleading questions. Well, I don't know. Maybe, again, we're quibbling over things here. It seems to me that the basic story about step one versus step two is that it matters for the court's discretion, and one of the principle things is how hard is each issue. If for some reason it's obvious that there's qualified immunity, but the questions of what exactly would be the parameters of a cause of action is more complicated, that would be a reason to skip that. If, on the other hand, in order to address step two appropriately, one might have to say certain things about what is lawful and what is not in the very process. I mean, after all, the first step in qualified immunity is the, is it a violation at all? They might be very intertwined. Understood, Your Honor. This is a case where step two readily resolves this issue, not only because there, and there's no dispute, there's no case out there suggesting to any agent that a request or pressure to inform on a member of one's co-religionist would, in fact, be a violation of RFRA and, relatedly, if you look at the particularized allegations of this complaint, not a single one of the plaintiffs indicated in any way to the defendants, any defendant, that doing so would violate his or her religious exercise. I had just one last question, and that would be it for me. Is there any, there are other cases out there, is one of your arguments. Are any of those cases ones that allege recent behavior of this kind? In other words, is there any reason to believe, from the state of pending cases, that it's not just that the government has mooted all the old cases where these allegations were made, but that, in fact, the government no longer engages in the kinds of practices that are alleged here? Well, to be very clear, we don't concede that these practices were engaged in at all, and, in fact. But are there even allegations, or are there cases out there where last year, let's say, it is alleged by a plaintiff that last year, and then recites exactly the same allegations as applied to that plaintiff, as these plaintiffs allege happened to them quite a few years ago? I confess I don't know the answer to that, Your Honor. I can say that these types of allegations were made in the FICRA case, which has been remanded by the Supreme Court. Thank you. Thank you, Counsel. We'll hear from them. Thank you, Your Honor. A few points quickly on that question of a prior case where there's alleged to be pretexts, Chablis v. Keble, DDC 2020, the government mooted. And the point about mooting quickly is that where there's the, I think Chablis says, a high likelihood that it can be mooted, like in the equitable context. But that's not exactly my question. I have a slightly different. My question is, okay, that case was in 2020. This case was in 2020. Oh, in terms of? But it alleges events that took place well before 2020. So what I'm asking is, is there any case in which it is alleged, similar allegations are made about agents of the FBI doing things like this within the last five years? There are a number of cases that allege it. Sorry if I misunderstood your point. The point we're trying to make is when they allege it, they get mooted, which is an important reason to reach step one. Well, maybe not. If what we're talking about is historical practices that they've wised up and stopped doing, then there is less of a reason to say we have to do something about this to make clear that they have to stop. I think all public and government reporting says that the no fly list is rife with abuse. The Chablis case is from 2020. So it continues. And if I could just sort of quickly address a couple of other points. First, the belief about not betraying co-adherence is foundational to Islam. It comes from the Koran, and I think most of it, and it's far more important, in my case, than the prohibition, say, on consuming alcohol. And it's considered to be the word of God of all Muslims. And to the extent that. Wait, wait, wait. Again, the question is then why do you allege, if this is so fundamental, why do you allege that many Muslims have this belief rather than that most Muslims have this belief and it is fundamental to their religious practice? You know, I mean, I'm going by what's in the complaint. Yes. And that seems to me implicitly to very conspicuously not allege that this is a belief universally held by Muslims. Well, we plead many because under the law at the time that we filed and continuing to be the law, we don't have to allege that all adherents have it. I just wanted to emphasize that it's not idiosyncratic. And then if there are problems with pleading, that's the problem with dismissing unqualified immunity. If this were considered under 12b-6, we might have the opportunity to re-plead rather than being kicked out of court entirely. And with respect to, like, clearly established law, Saber suggests we should start with the statute and says where the government, and this is also the Salahuddin case, where the government cannot present a compelling government interest and there isn't any that's narrowly tailored on the face of the complaint, qualified immunity should be denied. That's the general gist. And then the case we would rely on is not any case that says the no-fly list specifically is a tool to coerce. JALI is the case. The burden is not on the method. Under JALI, the burden is, quote, the choice presented by the state, either adhering to one's belief during key block, that constitutes a substantial burden. And that merges really well with the Edry case that we rely on involving a sound machine used by the NYPD to disperse a crowd and whether or not the defendants were entitled to qualified immunity. And the defendant said there's no case saying the LRAD 1000X is unlawful or there's a clearly established right. And Chief Judge Katzman rightly says that's too narrow an inquiry. The relevant inquiry is not the method of delivery but the effect on individuals. And so, too, here, the method, the no-fly list, is not what's important. It's the effect, the pressure to coerce. Wait, but just a minute ago you told me that it's very important that the no-fly list is right for abuse. I mean, they go together, right? Yes. Of course, if they made the same demand but backed it up by threatening to beat someone, that would be as bad or worse as this.  If there were a case just like that and it were held that no, because this is something that they should have known was a core religious belief, then that would be very helpful to your case. And the fact that it didn't involve the no-fly list wouldn't matter. I don't think that's what we're talking about. I don't think anybody's talking about there needs to be a case that specifically is about the no-fly list. I didn't argue that. That's my understanding of the district court's analysis. It's slightly too narrowly, and I think we don't need to read it that narrowly, Your Honour. And indeed RFRA provides robust protections and said this kind of behaviour 20 years since 9-11 is no longer permissible, and the courts are empowered, indeed obligated, to say what the law is. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisement.